# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br>THE STATE OF NEW JERSEY<br>*ex rel.* DAVID FREEDMAN,<br><br>                          Plaintiffs,<br><br><br>      v.<br><br><br>BAYADA HOME HEALTH CARE,<br>INC., *et al.*,<br><br>                          Defendants. | Civil Action No. 3:19-cv-18753-FLW-ZNQ |

## RELATOR'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND EXPENSES

## TABLE OF CONTENTS

1.   **INTRODUCTION** ................................................................1

2.   **LEGAL STANDARD** ........................................................2

    a.   **A "prevailing" defendant may obtain reasonable attorneys' fees and expenses under the False Claims Act if the claim of the person bringing the action was "clearly frivolous."** .................2

3.   **ARGUMENT** ....................................................................4

    a.   **False Claims Act jurisprudence illustrates that the "rare and special circumstances" required for a finding that claims are "clearly frivolous" are not present here.** ........................4

    b.   **Defense counsel's posturing does not demonstrate that any of Relator's claims are "clearly frivolous."** ........................9

    c.   **The motion to dismiss briefing does not demonstrate that any of Relator's claims are "clearly frivolous."** ...........................11

    d.   **The May 12 Opinion does not demonstrate that any of Relator's claims are "clearly frivolous."** .........................12

    e.   **Bayada's personal attacks and innuendo do not demonstrate that any of Relator's claims are "clearly frivolous."** ................15

    f.   **If this Court were to award fees to Bayada, its fee requests must be  sharply reduced because they are not reasonable.** ........17

        i.   *Bayada did not prevail on Relator's NJ FCA claims.* ...........18

        ii.   *Bayada's submitted time entries are not reasonable.* ...............20

4.   **CONCLUSION** ...............................................................30

i

# TABLE OF AUTHORITIES

## Cases

Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc., 637 F.3d 1047 (9th Cir. 2011)...........................................................................................8

Christiansburg Garment Co. v. Equal Employment Opportunity Commission, 434 U.S. 412 (1978)...........................................................................2, 4

Druding v. Care Alternatives, Inc., Civil Action No. 08-2126 (JBS/AMD), 2019 WL 337580 (D.N.J. Jan. 28, 2019)...........................................3, 14

Fraser v. Strang Communications, Civil Action No. 07-3026 (NLH), 2007 WL 2306701 (D.N.J. Aug. 6, 2007) .......................................................5

Hensley v. Eckerhart, 461 U.S. 424 (1983)...........................................................21

In re: Natural Gas Royalties Qui Tam Litigation, 845 F.3d 1010 (10th Cir. 2017)..6, 7

Maldonado v. Houstoun, 256 F.3d 181 (3d Cir. 2001).........................................23

McGrath on behalf of United States v. Microsemi Corp., No. CV-13-00864-PHX-DJH, 2017 WL 6626194 (D. Ariz. Feb. 2, 2017)...........................................8

Mikes v. Straus, 274 F. 3d 687 (2d Cir. 2001) ............................................ 3, 17, 20

Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546 (1986), opinion supplemented by 483 U.S. 711 (1987)...........................................18

Ping Chen ex rel. U.S. v. EMSL Analytical, Inc., 966 F. Supp. 2d 282 (S.D.N.Y. 2013) ............................................................................ 4, 12, 13

Pugach v. M & T Mortg. Corp., 564 F. Supp. 2d 153 (E.D.N.Y. 2018) ...................7

Rode v. Dellarciprete, 892 F.2d 1177 (3d Cir.1990) ...............................................18

Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc., 186 F.3d 157 (2d Circ. 1999) ................................................................................17

Simring v. Rutgers, 634 Fed.Appx. 853 (3d Cir. 2015) ...........................................28

U.S. ex rel. Atkinson v. Pennsylvania Shipbuilding Co., 528 F. Supp. 2d 533 (E.D.Pa. 2007) ........................................................... 4, 5, 16, 19

U.S. ex rel. Cimino v. International Business Machines Corp., No. 19-7139 (D.C. Cir.).................................................................................14

U.S. ex rel. Dunleavy v. County of Delaware, 538 U.S. 918, 123 S.Ct. 1619 (2003) ...........................................................................................16

U.S. ex rel. Fox Rx, Inc. v. Omnicare, Inc., No. 12CV275 (DLC), 2014 WL 6750277, at (S.D.N.Y. Dec. 1, 2014) ...........................................6

U.S. ex rel. Herbert v. National Academy of Sciences, Civ. A. No. 90-2568, 1992 WL 247587, at *5-8 (D.D.C. Sept. 15, 1992) ...............................................7

U.S. ex rel. Jacobs v. Lambda Research, Inc., 622 Fed. Appx. 477 (6th Cir. 2015)..7

U.S. ex rel. Stinson, Lyons, Gerlin & Bustamonte, P.A. v. Prudential Ins. Co., 944
    F.2d 1149 (3rd Cir. 1991) ................................................................16
U.S. ex rel. v. Muskingum Watershed Conservancy District, Case No. 5:13-cv-
    2145, 2017 WL 4102369 (N.D. Ohio Sept. 15, 2017) ........................10
U.S. ex rel. Vuyyuru v. Jadhav, 555 F.3d 337 (4th Cir. 2009) .....................5
U.S. v. Strock, 982 F.3d 51 (2d Cir. Dec. 3, 2020) ..................................14
Valenti v. Allstate Ins. Co. 243 F. Supp. 2d 200 (E.D.Pa. 2002) ..................21
Zebroski v. Gouak, Civil Action No. 09-cv-1857, 2011 WL 3565223 (E.D.Pa.
    Aug. 12, 2011) ...........................................................................18

## Statutes

31 U.S.C. § 3730(d)(4)................................................................ passim
Fed. R. Civ. P. 12(b)(6)..............................................................11
Fed. R. Civ. P. 15 ....................................................................13
Fed. R. Civ. P. 9(b) ..................................................................11
N.J.S.A. § 2A:32C-3 ...................................................................19

## Other Authorities

"Factors for Evaluating Dismissal Pursuant to 31 U.S.C. 3730(c)(2)(A)," from
    Michael D. Granston, Director, Commercial Litigation Branch, Fraud
    Section (Jan. 10, 2018) ...............................................................11

## 1.    INTRODUCTION

Relator David Freedman respectfully submits this memorandum in opposition to Defendants' Motion for Attorneys' Fees and Expenses (Dkt. 40-41) (the "Motion" or "Mot.").[1]

The federal False Claims Act ("FCA") allows, but does not require, a court to award attorneys' fees and expenses to a "prevailing" defendant in a non-intervened action with respect to a claim that was "clearly frivolous." 31 U.S.C. § 3730(d)(4) (referred to herein as "Subsection (d)(4)"). The plain language of this provision and the jurisprudence interpreting it make clear that the standard is "demanding" and reserved for "rare and special circumstances" that involve egregious and often improper conduct. Court decisions applying Subsection (d)(4) illustrate the application of that standard, and cases in which attorneys' fees and expenses have been awarded bear no similarity whatsoever to this action, which involved non-frivolous claims prosecuted in good faith by Relator and his counsel.

The arguments posited in support of Bayada's Motion do not even approach the extreme circumstances required by this demanding standard. In fact, the Motion does little more than restate the arguments Bayada made in its motion to

---

[1] Citations in this brief to pages of Bayada's Motion are to Defendants' Memorandum in Support of Their Motion for Attorneys' Fees and Expenses (Dkt. 41).

1

dismiss the Complaint, draped in exaggerated and dramatic rhetoric, and littered with baseless *ad hominem* attacks.

All of the claims in Relator's complaint were pursued appropriately under the law and in accordance with the policy animating the False Claims Act to encourage whistleblowers with inside knowledge to bring and litigate claims on behalf of the government.  Indeed, Bayada has not disputed the factual allegations underlying Relator's claims.  This Court's dismissal of Relator's federal FCA counts and declination of jurisdiction over his New Jersey False Claims Act ("NJ FCA") counts does nothing to establish or even suggest that any of the claims in the Complaint were so "clearly frivolous" as to justify the extraordinary relief that Bayada now seeks.  Bayada's Motion should be denied.

## 2.    LEGAL STANDARD

### a.    A "prevailing" defendant may obtain reasonable attorneys' fees and expenses under the False Claims Act if the claim of the person bringing the action was "clearly frivolous."

The general rule in the United States is that litigants must pay their own attorneys' fees.  "Congress has provided only limited exceptions to this rule under selected statutes granting or protecting various federal rights."  <u>Christiansburg Garment Co. v. Equal Employment Opportunity Commission</u>, 434 U.S. 412, 415 (1978) (internal citations and quotations omitted).

One such limited exception is found in the False Claims Act, at Subsection (d)(4), which provides that "[i]f the Government does not proceed with the action and the person bringing the action conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment."  While this subsection contains three possible bases for the award of attorneys' fees and expenses[2], Bayada's motion argues only that the Complaint was "clearly frivolous."  Mot. at 5.

A claim is frivolous for purposes of Subsection (d)(4) when, "viewed objectively, it may be said to have no reasonable chance of success, and present no valid argument to modify present law."  Mikes v. Straus, 274 F.3d 687, 705 (2d Cir. 2001), abrogated on other grounds by Universal Health Services, Inc. v. U.S., 136 S.Ct. 1989 (2016).  This standard is a "demanding one," Druding v. Care Alternatives, Inc., Civil Action No. 08-2126 (JBS/AMD), 2019 WL 337580, at *3 (D.N.J. Jan. 28, 2019), and even where dismissal of a complaint is appropriate, attorneys' fees will be denied to a prevailing defendant unless the bases for dismissal are "so staggeringly obvious as to render Plaintiff's action *objectively*

---

[2] For simplicity, unless otherwise stated, this memorandum will use the phrase "attorneys' fees" to refer to the attorneys' fees *and expenses* that are allowable under Subsection (d)(4).

3

frivolous." <u>Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.</u>, 966 F. Supp. 2d 282, 307 (S.D.N.Y. 2013) (internal citations omitted) (emphasis in original). An award of attorneys' fees under Subsection (d)(4) is within the court's discretion, and a court may deny a defendant's request for attorneys' fees even if all statutory requirements are met. <u>U.S. ex rel. Atkinson v. Pennsylvania Shipbuilding Co.</u>, 528 F. Supp. 2d 533, 537 (E.D.Pa. 2007).

The Supreme Court has cautioned that a defendant's request for attorneys' fees should be considered carefully without "*post hoc* reasoning" or "hindsight logic":

> In applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success….The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

<u>Christiansburg</u>, 434 U.S. at 421-22.

### 3.    ARGUMENT

a.    **False Claims Act jurisprudence illustrates that the "rare and special circumstances" required for a finding that claims are "clearly frivolous" are not present here.**

The award of attorneys' fees under Subsection (d)(4) is reserved for "rare and special circumstances" that bear no similarity whatsoever to the present action. <u>Atkinson</u>, 528 F. Supp. 2d at 543.

4

Indeed, the cases cited by Bayada defining the term "frivolous" as "lack[ing] an arguable basis either in law or fact," Mot. at 5, demonstrate the extraordinary and egregious conduct that this standard requires.  In Fraser v. Strang Communications, Civil Action No. 07-3026 (NLH), 2007 WL 2306701, at *1 (D.N.J. Aug. 6, 2007), the court interpreted "frivolous" under the Prison Litigation Reform Act and found that an inmate's claim for one hundred million dollars against the publisher of a book that was alleged to have promised that God would answer the reader's prayers met the standard for frivolousness that "the facts alleged are clearly baseless, a category encompassing allegations that are fanciful, fantastic, and delusional."  In Atkinson, the court *denied* defendants' motion for fees because such awards "should be reserved for rare and special circumstances," and "[a]lthough not meritorious in hindsight, the court cannot conclude that relator's conspiracy and other FCA claims against [defendants] were so unfounded as to meet the high standard required to award attorney fees and expenses under § 3730(d)(4)."  Atkinson, 528 F. Supp. 2d at 543.  In U.S. ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 356 (4th Cir. 2009) the court affirmed an award of defendant's attorneys' fees based on the "momentous failings of Relator Vuyyuru's evidence pertaining to his burden of establishing himself as a proper relator in order to avoid § 3730(e)(4)'s public disclosure jurisdictional bar," which failings included the Relator's sworn deposition testimony in a separate action that

he was not the source of newspaper articles that disclosed the subject conduct. And in U.S. ex rel. Fox Rx, Inc. v. Omnicare, Inc., No. 12CV275 (DLC), 2014 WL 6750277, at *4 (S.D.N.Y. Dec. 1, 2014), the court awarded defendant's attorneys' fees where the relator "well knew [defendant] had nothing to do with" the alleged schemes, "[n]or did it have any financial incentive to engage in these schemes," and relator's theory of liability was "based wholly on an obvious misreading" of the key contract at issue.

A thorough review of Subsection (d)(4) jurisprudence confirms that while there are few published (or unpublished) opinions granting attorneys' fees, those that do address unusual circumstances typically involving indisputable misconduct. For example:

- In In re: Natural Gas Royalties Qui Tam Litigation, 845 F.3d 1010 (10th Cir. 2017), the Tenth Circuit affirmed the award of defendant's attorneys' fees in an action in which the relator, after the dismissal of its initial complaint, responded by filing 73 actions against more than 300 defendants. These actions were consolidated and survived a motion to dismiss only due to the court's reliance on an exhibit submitted by the relator that was an "outright fabrication[] designed [to] mislead the court into believing [the relator's] allegations were based on something more than complete speculation." Id. at 1018. The relator pursued FCA claims despite "knowing that he lacked

6

the factual basis necessary to support such specific allegations," and his "deposition testimony and interrogatory answers confirmed that he had lacked an evidentiary basis for that allegation." Id.

- In Pugach v. M & T Mortg. Corp., 564 F. Supp. 2d 153 (E.D.N.Y. 2018), the court awarded defendant's attorneys' fees where relators and their counsel "brought and maintained a frivolous action and had done so vexatiously," continuing to litigate FCA claims after the factual basis for those claims was rejected by numerous courts and had previously resulted in sanctions against relators for vexatious litigation. See also Decision and Order, Case 2:05-cv-02498-ENV-MLO, dated Oct. 10, 2007 (Dkt. 71).

- In U.S. ex rel. Herbert v. National Academy of Sciences, Civ. A. No. 90-2568, 1992 WL 247587, at *5-8 (D.D.C. Sept. 15, 1992), the court awarded defendants' attorneys' fees under Subsection (d)(4) and Rule 11 where relator committed an "abuse of the qui tam process" and relator's counsel misrepresented to the court that the qui tam action concerned different issues from those in a prior action dismissed by the court, and "repeatedly attempted to delay and harass the defendant."

- In U.S. ex rel. Jacobs v. Lambda Research, Inc., 622 Fed. Appx. 477 (6th Cir. 2015), the court awarded defendant's attorneys' fees and sanctioned relator's counsel for persisting with litigation through summary judgment despite

multiple warnings from the Court to dismiss the action if it lacked factual support.  See also U.S. ex rel. Jacobs v. Lambda Research, Inc., Case No. 1:10-cv-536, 2015 WL 11120335 (S.D. Ohio May 20, 2015).

Indeed, fees have been *denied* under Subsection (d)(4) even where clear misconduct occurred.  In Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc., 637 F.3d 1047, 1052 (9th Cir. 2011), the relator committed "numerous discovery abuses," admitted in her response to an interrogatory request that she had not asserted claims under the FCA, yet moved to file a 733-page second amended complaint.  The Ninth Circuit affirmed the dismissal of the action, the denial of relator's motion for leave to amend, and the award of defendant's attorneys' fees regarding its contract-based counterclaim, but explained the absence of an award of attorneys' fees under Subsection (d)(4):

> We take seriously Cafasso's concern that awarding fees against a qui tam claimant may chill prospective relators from exposing frauds on the government. This consideration generally counsels against a fee award, and courts should not reject such arguments out of hand. However, relators and their attorneys are not free to engage in misconduct without consequences merely because those consequences might chill others. Further, the awarded fees cover GDC4S's successful contract claim, not Cafasso's FCA claim. We are confident that future litigants will appreciate the difference.

Id. at 1062-63; see also McGrath on behalf of United States v. Microsemi Corp., No. CV-13-00864-PHX-DJH, 2017 WL 6626194, at *4 (D. Ariz. Feb. 2, 2017) (quoting from Cafasso the "serious concern" that "awarding fees against a qui tam

claimant may chill prospective relators from exposing frauds on the government," and denying defendant's motion for attorneys' fees).

None of the "rare and special circumstances" that courts have held justify an award of attorneys' fees are present here. To the contrary, the short history of active litigation in this action is bereft of any legitimate suggestion of improper conduct by Relator or his counsel, and has followed a straight and common path from the unsealing of Relator's complaint through the defendants' motion to dismiss. Bayada's motion presents no arguments or facts that meet the high standard for an award of its attorneys' fees under Subsection (d)(4).

### b. Defense counsel's posturing does not demonstrate that any of Relator's claims are "clearly frivolous."

Bayada's first argument that Relator's claims are "clearly frivolous" is that Relator did not voluntarily dismiss his claims in response to a single paragraph in an email sent by its defense counsel to Relator's counsel. Mot. at 5-6.

The email in question did not cite to any controlling caselaw, or any caselaw at all, and merely asserted in summary fashion that Relator's complaint failed to state a claim.[3] Neither does the Motion cite to any caselaw in support of its

---

[3] Notably, the sweeping scope of the primary argument Bayada's counsel offered in this short email – that a "theory that a misrepresentation by a purchaser of a home health agency to the seller somehow taints all claims subsequently submitted to federal health care programs for services provided after the sale is well beyond the bounds of materiality" – was rejected by this Court. See May 12 Opinion at 11 ("Bayada's position is not entirely correct …. under fraudulent

9

argument that the type of commonplace posturing that any defense counsel would take in any case in which it moved to dismiss the complaint satisfies the "demanding" standard of Subsection (d)(4), and we are unaware of any.  See U.S. ex rel. v. Muskingum Watershed Conservancy District, Case No. 5:13-cv-2145, 2017 WL 4102369, at *1 (N.D. Ohio Sept. 15, 2017) (denying defendant's motion for attorneys' fees despite fact that "[a]fter the complaint was served, defense counsel sent correspondence to relators' counsel identifying various pleading deficiencies it viewed with respect to relators' complaint and requesting that relators voluntarily dismiss their claims," which claims were subsequently dismissed on defendant's motion).

Bayada's counsel sent its email to Relator's counsel on August 31, 2020, which according to the timesheets filed with the Motion was only seven days after Bayada's counsel had a teleconference with the Assistant U.S. Attorney assigned to this case in which they "request[ed] that the government dismiss this lawsuit over Relator's objections."  (Dkt. 40-2 at 2.)  Bayada does not mention that the August 31st email that it asserts put Relator on notice that his claims were frivolous was sent only *after* Bayada's counsel *failed* to convince the United States that

---

inducement case law, it is irrelevant whether Bayada's ultimate claims themselves are legitimate.").

10

Relator's claims were frivolous or that Relator's prosecution of the claims in this action was contrary to the government's interest.[4]

**c.    The motion to dismiss briefing does not demonstrate that any of Relator's claims are "clearly frivolous."**

Bayada's second argument that Relator's claims are "clearly frivolous" is that Bayada successfully argued in its motion to dismiss that Relator's *federal* FCA claims failed to state a claim under Fed. R. Civ. P. 12(b)(6) and 9(b).  Mot. at 6-7.

This argument does nothing more than repeat the grounds on which the Complaint was dismissed, along with a mischaracterization of Relator's brief in opposition to Bayada's Motion to Dismiss.  Compare Mot. at 2 ("Relator suddenly pivoted in his opposition brief and incorrectly characterized the County as "the government" for purposes of FCA liability") with Complaint at ¶ 12 ("The State of New Jersey is a real party in interest to the claims in this action.  The Ocean County Health Department and Ocean County Board of Health are authorities, commission, instrumentalities, and/or agencies of the State of New Jersey.").

Restating the grounds on which a claim was dismissed does not even approach the standard for attorneys' fees under Subsection (d)(4).  See Ping Chen,

---

[4] One of the express bases contained in the "Granston Memo" on which the Department of Justice may move to dismiss a non-intervened *qui tam* action is that the action is "frivolous."  See "Factors for Evaluating Dismissal Pursuant to 31 U.S.C. 3730(c)(2)(A)," from Michael D. Granston, Director, Commercial Litigation Branch, Fraud Section (Jan. 10, 2018).

966 F. Supp. 2d at 304 (rejecting defendant's request for attorneys' fees that offered the same "bases for dismissal," since "although the Court agrees that dismissal is appropriate, the bases therefore are not so staggeringly obvious as to render Plaintiff's action *objectively frivolous*.") (internal quotations omitted, emphasis in original).

### d.    The May 12 Opinion does not demonstrate that any of Relator's claims are "clearly frivolous."

Bayada's third argument in support of its Motion is that the Court's May 12, 2021 Opinion (the "May 12 Opinion") demonstrates that Relator's claims are frivolous.  Mot. at 7-9.

This argument relies entirely on cherry-picked quotations from the May 12 Opinion that are consistent with its conclusion that Relator's federal FCA counts failed to state a claim, but that fall far short of the type of findings required to meet the "demanding" standard of Subsection (d)(4).  Notably, while the Motion describes Relator's claims as "frivolous" at least a dozen times, that term is not used in the May 12 Opinion even once.  The Motion's attempt to characterize this opinion otherwise merely highlights its confusion between the standard for dismissal of a complaint and the far higher standard for attorneys' fees under Subsection (d)(4).

The Motion also asserts numerous times that the May 12 Opinion denied Relator's claims "with prejudice" and "refus[ed] to grant Relator an opportunity to

amend," Mot. at 1-2, even though the May 12 Opinion never states that the dismissal was with prejudice and contains no discussion whatsoever of the standard under Fed. R. Civ. P. 15 for amending a complaint.  In any event, even the dismissal of claims with prejudice and the express rejection of a relator's motion to amend the complaint does not indicate that such claims are so "clearly frivolous" as to justify an award of attorneys' fees under Subsection (d)(4).  See Ping Chen, 966 F. Supp. 2d at 304 (denying motion for attorneys' fees under Subsection (d)(4) where complaint was dismissed and leave to amend was denied). Furthermore, and contrary to the Motion's assertions, the May 12 Opinion expressly granted Relator the opportunity (and additional time) to refile his NJ FCA claims in state court.  The May 12 Opinion even observed that the facts pled in Relator's Complaint (which Bayada has not disputed) were "concerning" and indicate that "Bayada seemingly violated both the RFP and state law by failing to disclose its contingency fee arrangement with Gilmore," and that "[o]ther parties, such as Ocean County or Ocean Home Certified … may have viable causes of action in state court."  May 12 Opinion at 11, 22 n. 7.

While the May 12 Opinion contains no findings that would support an award of attorneys' fees under Subsection (d)(4), it acknowledged the current and evolving state of the fraudulent inducement theory in FCA jurisprudence, specifically referencing the absence of direct guidance from the Third Circuit.

May 12 Opinion at 13 ("Short of explicit guidance from the Third Circuit that the FCA's falsity element is so expansive, and despite my reservations about the way in which Bayada became the successful bidder for Ocean County's healthcare agency, I decline to adopt Freedman's theory.").  In fact, fundamental issues relating to the analysis of fraudulent inducement FCA cases are presently being argued before the D.C. Circuit.  U.S. ex rel. Cimino v. International Business Machines Corp., No. 19-7139 (D.C. Cir.).  The Second Circuit only recently weighed in on this subject and in U.S. v. Strock, 982 F.3d 51 (2d Cir. Dec. 3, 2020) issued an opinion that declined to adopt either the approach advocated by the United States or the approach advocated by the defendant, further illustrating the reasonable divergence of views in this complex area.

It is particularly important that awards under Subsection (d)(4) not be granted in a manner that would deter relators from pursing cases "in areas of the law that are not well-trodden."  Druding, 2019 WL 337580, at *3 (denying defendant's motion for attorneys' fees under Subsection (d)(4) and noting that "[l]itigants are well within their rights to attempt to advance the law or to overturn precedent, particularly in areas of the law that are not well-trodden."); see also Motion at 6 (describing the fraudulent inducement theory of FCA liability as "rarely invoked").  The uncertain and changing jurisprudential landscape for

fraudulent inducement cases further undercuts Bayada's assertion that Relator's claims were "clearly frivolous."

**e.    Bayada's personal attacks and innuendo do not demonstrate that any of Relator's claims are "clearly frivolous."**

Bayada's Motion contains a collection of unfounded and derogatory personal attacks against Relator and his counsel, yet it makes no attempt to support the truthfulness or relevance of these assertions, apparently content to hope that the Court is swayed by its baseless rhetoric alone.

The Motion asserts that Relator "was blinded by his animus towards BAYADA and the prospect of a financial windfall," Mot. at 1, "knew the lawsuit lacked merit," Mot. at 3, knew that his claims were "bereft of legal or factual support," Mot. at 5, and submitted a "bizarre" letter to the Court that "demonstrates Relator's lack of respect for the judicial process and lays bare his intent to use the courts in whatever self-serving manner he sees fit," Mot. at 9 n. 2.[5]  Exactly to the contrary, Relator acted with good faith and respect towards the judicial process at all times and pursued his non-intervened claims in precisely the manner encouraged by the 1986 amendments to the FCA, which were designed "to encourage persons with firsthand knowledge of fraudulent misconduct to report

---

[5] To clarify the record, Relator submits with this brief the Declaration of David Freedman, attached hereto as Exhibit 1, which addresses Relator's lack of involvement in Bayada's fraudulent conduct underlying this action.

fraud." U.S. ex rel. Stinson, Lyons, Gerlin & Bustamonte, P.A. v. Prudential Ins. Co., 944 F.2d 1149, 1154 (3rd Cir. 1991); see also Atkinson, 528 F. Supp. 2d at 546 ("To award attorney fees and expenses in this case would dissuade the type of litigation that Congress has deemed beneficial.")  The Motion even acknowledges that *ad hominem* attacks against Relator are irrelevant to the *objective* standard of "frivolous" under Subsection (d)(4).  Mot. at 1.

The Motion also asserts, similarly without attempt at justification, that Relator's counsel "knew that the lawsuit lacked merit."  Mot. at 3.  Relator's counsel combine for over a half-century of successful practice under the False Claims Act, during which time they have never been sanctioned for filing frivolous claims or had attorneys' fees awarded against a client under Subsection (d)(4). Relator's counsel are experienced FCA attorneys and are recognized and respected in the legal industry.  Relator's counsel have successfully represented FCA relators since at least 1995.  Relator's counsel have filed FCA cases throughout the United States, and worked productively with U.S. Attorneys' Offices in those jurisdictions in both intervened and declined matters, including successfully filing a Petition for Certiorari in the United States Supreme Court on an FCA issue (U.S. ex rel. Dunleavy v. County of Delaware, 538 U.S. 918, 123 S.Ct. 1619 (2003)).  Relator's counsel receive many referrals and calls for representation but only pursue cases that have merit and will meet the FCA's exacting standards.  Bayada's assertion of

bad faith against Relator's counsel is unfounded, incorrect, unprofessional, and irrelevant to its Motion.

**f.      If this Court were to award fees to Bayada, its fee requests must be sharply reduced because they are not reasonable.**

Even if this Court were to determine that Bayada is entitled to an award of attorneys' fees, the amounts requested should be denied or greatly reduced. Bayada has failed to allocate its fees between those claims in which it prevailed, and those in which it did not prevail.  It has also failed to establish that its counsel's time entries are reasonable, as they contain excessive redactions, redundancy, excessive time for tasks, block billing and billing for clerical work.  If any fees are permitted, this Court must significantly reduce Bayada's requested amount due to its failure to allocate its time between claims and its unreasonable time entries.

"[A] defendant is entitled to attorneys' fees for only those particular claims of a plaintiff deemed to be frivolous." <u>Mikes</u>, 274 F.3d at 705 (citing <u>Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.</u>, 186 F.3d 157, 177-78 (2d Cir. 1999)).  If some of the claims at issue are not deemed frivolous, the defendants cannot claim fees for that portion of their work.

A fee award calculated using the "lodestar" method, requiring a court to determine a reasonable hourly rate then multiply that rate by the reasonable number of hours expended on the litigation, is presumed reasonable.  <u>Pennsylvania</u>

17

v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 564 (1986), opinion supplemented by 483 U.S. 711 (1987). The movant must prove the reasonableness of both the hourly rate and the number of hours expended by submitting sufficient evidence to support its claims.

The evaluating court must conduct a "thorough and searching analysis," Zebroski v. Gouak, Civil Action No. 09-cv-1857, 2011 WL 3565223, at *2 (E.D.Pa. Aug. 12, 2011), of the submitted timesheets to determine the reasonable number of hours spent on the matter and "exclude hours that are not reasonably expended. Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir.1990). A court may deduct inadequately documented hours. Id.

> i.   *Bayada did not prevail on Relator's NJ FCA claims.*

A defendant may only obtain attorneys' fees for those specific claims with respect to which it is the "prevailing party." 31 U.S.C. § 3730(d)(4). Defendants are not a "prevailing party" on Relator's claims under the NJ FCA. The NJ FCA claims arise from the same fact pattern as the federal FCA claims but present a different legal cause of action and a different damages model. For example, under the NJ FCA claims, the State of New Jersey is entitled to recover the difference

that Ocean County would have obtained had it not chosen Bayada, and instead had

chosen the other, higher bidder, in the amount of $500,000.[6]

This Court's May 12 Opinion dismissed Relator's claims under the federal

FCA but did not address the merits of his claims under the NJ FCA. Instead, the

May 12 Opinion declined to exercise supplemental jurisdiction over Relator's NJ

FCA claims and expressly tolled for thirty days the statute of limitations for such

claims to allow Relator to re-file those claims in state court. See Order (Dkt. 37).

When a federal court declines to exercise supplemental jurisdiction over

state claims, it does not rule on the merits of those state claims and therefore the

defendant is not a "prevailing party" with respect to those claims under the FCA.

Atkinson, 528 F. Supp. 2d at 538-39 (distinguishing between jurisdictional

determinations that "affect only where a suit may be brought, not whether it may

be brought at all" from jurisdictional determinations that "adjudicate the

substantive rights of the parties" and therefore may qualify a defendant as a

"prevailing party" under the FCA.). "[W]here the plaintiff is pursuing or is free to

pursue relief in state court, the defendant has not yet prevailed on any issue of

substance." Id. at 542.

Bayada's Motion and accompanying time records fail to distinguish between

claims in the Complaint on which it is a "prevailing party" and claims on which it

---

[6] Damages under the NJ FCA are trebled. N.J.S.A. § 2A:32C-3.

is not.  See Mikes, 274 F. 3d at 706 ("Since defendants were entitled to attorneys'

fees only on the MRI claims, they were required to provide those contemporaneous

time records that would allow the district court to determine the amount of time

spent litigating those claims.")  Bayada's failure to delineate its time spent on

claims on which it is a "prevailing party" and claims on which it is not is an

independent ground to deny its requested attorneys' fees.  Id. at 705.  Bayada

cannot claim the right to be reimbursed for all of its time because it failed to

allocate time between the federal FCA and NJ FCA causes of action.  Bayada's

time records do not contain information necessary to quantify time spent on issues

specific to the NJ FCA claims, but it is apparent that such issues accounted for a

portion of its counsel's time.  See e.g., Defendants' Reply in Support of Their

Motion to Dismiss the Complaint (Dkt. 35) at 14-15 (containing legal arguments

specific to Relator's claims under the NJ FCA).

     If this Court were to award Bayada its attorneys' fees, a deduction

must be made for Bayada's time spent responding to the NJ FCA claims.  Relator

respectfully requests that this Court reduce Bayada's total fee request by 15% to

account for work performed on the NJ FCA claims.

     ii.     *Bayada's submitted time entries are not reasonable.*

     Bayada's submitted time entries are not reasonable.  The entries contain

excessive redactions that obliterate the context necessary to determine the entries'

reasonableness, are redundant and excessive, contain improper block billing, and contain clerical entries that are not reimbursable.

**<u>Redacted Time Entries</u>**

Bayada billed for a total of 154.6 hours.  Bayada redacted large amounts of information from its submitted time entries, eliminating the ability to analyze those entries for reasonableness and relevance to this case.  Entries containing these redactions must be excluded from any award, as a court cannot determine whether redacted time entries involve non-compensable time.  See <u>Hensley v. Eckerhart,</u> 461 U.S. 424, 433 (1983) ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."); <u>Valenti v. Allstate Ins. Co.</u>, 243 F. Supp. 2d 200, 220 (M.D.Pa. 2003) (excluding redacted time entries in fee calculation, as "the redacted information has never been supplied to the court," and finding that "[r]edactions of this nature, under the guise of 'privilege' are not only perplexing, but costly, inefficient and time consuming for the court to review.").

Entries with redacted sections amounted to 79.4 of the 154.6 hours submitted, or 51.36% of hours billed.

1)    On 8/17/20, partner Funk entered 2.00 hours for, among other things, reviewing and analyzing [REDACTED] docket.  The redacted section precludes an analysis of whether this entry was reasonable.

2)   On 8/18/20, partner Reinberg spent 2.00 hours investigating whether to file a motion to dismiss and redacted information.  The redacted section precludes an analysis of whether this entry was reasonable.

3)   On 8/26/20, Funk spent 0.30 hours conferencing with Reinberg and McEvoy (whose time was not billed) about a redacted issue.  The redacted section precludes an analysis of whether this entry was reasonable.

4)   Between 9/24/20 and 9/30/20, associate Walter spent 15.8 hours performing legal research on topics that are redacted.  The redacted section precludes an analysis of whether these entries were reasonable.

5)   Between 10/1/20 and 10/5/20, Walter spent 5.60 hours researching and analyzing topics that are redacted.  The redacted section precludes an analysis of whether these entries were reasonable.

6)   Between 10/2/20 and 10/19/20, partner Nagi spent 3.1 hours editing and reviewing documents and determining the application of New Jersey local rules to the filing of the motion to dismiss, part of which contained redactions.  The redacted sections preclude an analysis of whether these entries were reasonable.

7)   On 11/24/20, Reinberg spent 1.20 hours speaking with Funk regarding an extension of time to file Reply brief and conferring regarding redacted

subjects.  The redacted section precludes an analysis of whether this entry was reasonable. This entry also contains block billing.

8) Between 11/24/20 and 12/14/20, Walter and associate Eng spent 34.6 hours researching, drafting and editing the 15-page reply brief, or 2.30 hours per page.  Most of the entries describing the work include redacted items.  The redacted sections preclude an analysis of whether these entries were reasonable.

9) During this same timeframe, Funk spent 26.4 hours drafting and editing the 15- page reply brief.  Most of the entries describe drafting and editing issues with redacted items.  The redacted sections preclude an analysis of whether these entries were reasonable.

Because of Bayada's excessive redactions, these entries cannot be analyzed for reasonableness.  These redacted entries must be removed from any time award. We respectfully suggest that the Court reduce Bayada's counsel's time by 51.36% to account for the excessive redactions.

**<u>Redundant and Excessive Time Entries</u>**

Bayada's counsel billed for redundant and excessive matters, or hours that "were [not] reasonably expended for each of the particular purposes described…" <u>Maldonado v. Houstoun</u>, 256 F.3d 181, 184 (3d Cir. 2001).  At least twenty-five of its hours billed contain redundant or excessive matters.  The most glaring example

of excessive, unreasonable time entries is Bayada's counsel's use of five attorneys[7] (three of whom were partners) for this litigation that, over the course of six months, resulted in two briefs, each 20 pages or fewer in length.  For example:

1)  On 8/17/20, attorneys Reinberg and Funk each spent over an hour reviewing the docket, which contained very few entries.  Reinberg notes that he reviewed the case's removal from the docket, a normal and customary practice with FCA cases in the District of New Jersey that any attorney practicing locally would know and that accordingly would not warrant an hour-long review.  The entry does not contain any context explaining how this activity was reasonable and is thus excessive and unnecessary.

2)  On 8/17/20, Funk spent 2.00 hours reviewing and analyzing the [REDACTED] docket and reviewing a declaratory judgment action filed against the District of New Jersey.  The entry does not contain any context explaining how this activity was relevant or reasonable and is thus excessive and unnecessary.

3)  On 8/19/20, Reinberg spent 1.20 hours reviewing documents defendants produced in 2017 related to a subpoena.  There is nothing that remotely

---

[7] The use of five attorneys resulted in $1,072.72 in costs related to Pro Hac Vice motions, and fees for 0.8 hours of Nagi's time and 5.7 hours of paralegal Backus' time in writing and editing the five Pro Hac Vice motions.  These costs and time are excessive.  We request that the Pro Hac Vice costs be reduced by one third to account for excessive Pro Hac Vice admissions.

suggests that this entry relates to the current case, which was filed two years after the subject subpoena.  The entry does not contain any context explaining how this activity was reasonable and is thus excessive and unnecessary.

4)  Reinberg spent almost two hours in August 2020 repeatedly contacting Assistant U.S. Attorney Daniel Meyler, despite the case being declined by the United States.  Reinberg provided no context for these calls or why they were reasonable, and not excessive.  The entry does not contain any context explaining how this activity was reasonable and is thus excessive and unnecessary.

5)  On 9/23/20, Funk spent 0.90 hours drafting correspondence to Walter and conferencing with her regarding strategy for the Motion to Dismiss.  Walter charged 0.30 for these discussions.  The entry does not contain any context explaining how Funk's activities were reasonable and is thus excessive and unnecessary.

6)  On 9/30/20, Funk spent 1.30 hours and Reinberg spent 0.80 hours reviewing the motion to dismiss.  These entries are redundant, as it is not necessary for two partners to perform the same work.

7)  Between 10/1/20 and 10/5/20, Walter spent 5.60 hours researching and analyzing redacted items allegedly related to the Motion to Dismiss.  During

that same timeframe, Funk spent 17.3 hours performing the same tasks. Between 10/2/20 and 10/19/20, Reinberg spent 7.7 hours reviewing and editing the Motion to Dismiss and reviewing the ECF notice. This time was redundant and excessive, as it was not necessary for two partners to perform the same work, especially given the associate's work on the matter. Reinberg's time is excessive and unbillable.

8)   During that same timeframe, Nagi, Posinelli's local counsel and a partner in the New York office, spent 3.1 hours performing the same tasks as Funk and Reinberg, and determining the application of New Jersey local rules to the filing of the motion. It was not necessary for three partners to review this work, and the application of New Jersey rules to the motion does not take three hours. The entry does not contain any context explaining how this activity was reasonable and is thus excessive and unnecessary. At least two hours of Nagi's time is excessive and unbillable.

9)   On 11/23/20, partners Reinberg, Nagi and Funk all billed for reviewing Relator's response to Motion to Dismiss. Funk's time included additional legal research. This time is redundant and excessive, as it is not necessary for three partners to perform the same work.

10)  On 11/24/20, Reinberg spent 1.20 hours corresponding with the client and Funk regarding an extension of time to file Reply brief. Reinberg's time for

26

discussion of an extension of time to file a Reply Brief is excessive.  The entry does not contain any context explaining how this activity was reasonable or how this amount of time was not excessive and unnecessary.

11)    Between 11/24/20 and 12/14/20, associates Walter and Eng spent 34.6 hours researching, drafting and editing the 15-page reply brief, or 2.30 hours per page.  These entries are excessive and redundant.  See e.g., Maldonado v. Houstoun, 256 F.3d 181, 186 (3d Cir. 2001) (researching and briefing did not require creating or developing an original theory or analyzing obscure principles of law).  This amount of time should be reduced to a reasonable amount.

12)    During this same timeframe, partner Funk spent 26.4 hours drafting and editing the 15- page reply brief, and partner Reinberg spent 5 hours reviewing the work.  Most of the entries describe drafting and editing redacted issues that were the subject of this work.  This amount of time was excessive and unnecessary, since it is redundant of the associates' time, and excessive hours had already been spent writing the originating brief.

As these entries indicate, Bayada's counsel's work contained excessive and redundant entries.  The submitted time entries do not contain any context explaining how the activities were reasonable.  The excessive time must be

27

excluded as unreasonable.  We respectfully suggest that this Court reduce Bayada's counsel's time by 25 hours or 16%, to account for this excessive time.

## Block Billing and Billing for Clerical Work

Bayada's counsel used impermissible block billing, and improperly billed for clerical work.  Block billing improperly "obfuscate[es] exactly how much time [the attorney] spent on any given task."  Simring v. Rutgers, 634 Fed.Appx. 853, 861 (3d Cir. 2015).  Simring cites numerous other Courts of Appeals for the legal proposition that "across-the-board reductions in hourly rates due to the vagaries of block billing" are acceptable.  Id.  Clerical work is not attorney or paralegal work, and therefore not billable.  Bayada used block billing and billed for clerical work for at least 6.9 hours, or 4.5% of its time entries.

1) Reinberg's entries, including the 8/17/20 entry for reviewing the docket and work on procedural issues, the 8/19/20 entry for reviewing documents, revising the document hold letter and corresponding with AUSA Daniel Meyler, the 9/9/20 entry for reviewing correspondence and discussing a separate topic with Funk, the 10/6/20 entry for correspondence with the client then preparing a motion for and discussing the status of Pro Hac Vice applications, and the 11/24/20 entry for corresponding with the clients and conferring with Funk regarding redacted subjects, contain block billing.

2) Funk's entries, including the 8/17/20 entry for reviewing a docket and a declaratory judgment, contain block billing that does not permit reductions for unbillable time, such as the unrelated declaratory judgment review.

3) On 9/30/20, Reinberg charged for time submitting the Pro Hac Vice applications. The entry included time for unbillable clerical work, such as electronic filing of documents. The exact time spent on filing is unknown, since the time was block billed with other tasks.

4) On 10/12/20, paralegal Backus spent 2.10 hours drafting attorney certifications and electronically filing documents. This entry contains improper block billing. The entry also includes unbillable clerical work such as efiling.

5) On 10/13/20 Walter spent 0.5 hours performing unbillable clerical tasks, such as resolving issues regarding the certificate of service and providing copies of the filed documents to parties and the Court.

These entries and those in the time sheets containing block billing or clerical work must be reduced or removed from any fee award, as they are improper and cannot be compensated. We respectfully suggest that this Court reduce Bayada's counsel's time by 6.9 hours, or 4.5%, to account for block billing and clerical work.

Bayada's Motion, and its exhibits, fail to sustain its burden of proof that the submitted hourly rates and time entries were reasonable.  Bayada also failed in its duty to allocate time between the two causes of action presented in this matter.  We respectfully request that if this Court were to award any attorneys' fees at all that it drastically reduce the requested time due to Bayada's failure to allocate, unreasonable hourly rates and unreasonable time entries, including excessive use of redactions, redundant entries, and excessive block billing and clerical time billing.

## 4.     CONCLUSION

Bayada's Motion ignores the proper standard for the award of attorneys' fees under Subsection (d)(4).  None of its arguments come close to establishing a factual or legal basis for a conclusion that any of Relator's claims are so "clearly frivolous" as to warrant the extraordinary relief it seeks.  By merely repeating the reasons why this Court dismissed the Complaint, Bayada improperly conflates the standard for dismissal with the far more demanding standard for an award of fees, and its personal attacks on Relator and his counsel are as baseless as they are irrelevant.

Similarly, Bayada's Motion fails to establish that its timesheet entries are reasonable.  For all these reasons, Bayada's Motion should be denied.

DATED:  July 6, 2021                          ___/s/ Scott B. Piekarsky___
                                              Scott B. Piekarsky
                                              Marc A. Landis
                                              PHILLIPS NIZER LLP
                                              433 Hackensack Avenue
                                              Suite 803
                                              Hackensack, NJ 07061
                                              Telephone: (201) 487-3700
                                              spiekarsky@phillipsnizer.com
                                              mlandis@phillipsnizer.com

                                              Jeanne A. Markey
                                              Gary L. Azorsky
                                              Raymond M. Sarola
                                              Regina D. Poserina
                                              COHEN MILSTEIN SELLERS &
                                              TOLL PLLC
                                              1717 Arch Street
                                              Suite 3610
                                              Philadelphia, PA 19103
                                              Telephone: (267) 479-5700
                                              jmarkey@cohenmilstein.com
                                              gazorsky@cohenmilstein.com
                                              rsarola@cohenmilstein.com
                                              rposerina@cohenmilstein.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing document was filed electronically with the above-captioned court, with notice of case activity to be generated with a link to the filed document and sent electronically by the Clerk of said court (with a copy to be mailed to any individuals who do not receive notice from the Clerk) this 6th day of July 2021, to all counsel of record.

    /s/ Scott B. Piekarsky

Scott B. Piekarsky
